MORTON EHRLICH, Plaintiff, v. ROSE EHRLICH, Defendant.

Supreme Court, Trial Term, Kings County, June 19, 1943.

*Irving D. Novick* for plaintiff.

*Balthasar J. Caruso* for defendant.

F. E. JOHNSON, J.   The plaintiff sues to annul his marriage with the infant defendant on the claim that prior to the marriage she falsely represented that he was the father of a child not yet born, and that believing this he married her; that the statement was false, and he has not cohabited with her since. The question of veracity lay between them because there was no disinterested witness except, perhaps, the physician to whom the parties went before the marriage.   He testified to finding physical conditions which he then thought were signs of pregnancy; he gave them his opinion to that effect.   It seems significant that the plaintiff accepted the diagnosis as true; he knew whether probabilities favored that opinion, and his conduct in promptly marrying the defendant seems indicative of his belief in the possibility of pregnancy and the probability of his responsibility.

The failure of that child to be born after the marriage is explained by the defendant's statement that there was a miscarriage at which she was attended by an ambulance doctor. There is no disproof of this claim.   A child was born about sixteen months after the marriage; the plaintiff denies paternity, although during that period there was access; the defendant claims marital relations after the marriage and the probabilities favor it.

Under the circumstances disclosed at the trial the plaintiff's conduct in going to the maternity hospital and bringing the defendant and that child back after its birth seems convincing proof of his belief that it was his child.   If after the marriage he left her in the belief that she had defrauded him into marriage, and he had nothing further to do with her, it seems

incredible that she could persuade him over a year later to come to a maternity hospital and take her and her illegitimate child home.

This case really turns on the paternity of that child; if plaintiff is not the father, veracity should be decided in his favor. His complaint's claim of no marital relations since marriage (par. 7) attacks legitimacy; he thereupon must overcome one of the strongest presumptions known to the law (10 C. J. S., Bastards, § 3, p. 20, where the New York cases are collated).

Under all the circumstances disclosed the issue of veracity ought to be decided in defendant's favor because of the impressions they made while testifying. There would be no difficulty in so deciding veracity except for the testimony of the medical expert who, under an order of this court, took blood samples from all three, and gave his opinion that the child was not that of the plaintiff. All the tests that he could have made were not made, which seems to subject his opinion to some discount. Wigmore, in his 1940 edition (1 Wigmore on Evidence [3d ed.] § 165b) has an elaborate note on blood tests to determine if one is not the father; the A, B and O types of blood, for which he gives formulae in great detail, are not those used by the expert in this case. Speaking of the M and N types, which the expert did use, Wigmore says, at page 618: " It is true, however, that certain scientists have developed other subtypes, known as the M and N types, which are forensically reliable and may at some not distant period of knowledge serve to enlarge the practical possibilities of proof.". He also says, at page 621, that the tests " for negative proof may after all not be determinative in a given case."

The plaintiff has not met the burden of proof; judgment for the defendant.